Good morning. May it please the Court. Your Honor, Stephen Larson for the appellant, Tony Graham and Elizabeth Brockwell on behalf of themselves and of course all others similarly situated. I'm here with my colleague, Ori Neve, who's been assisting me with this this appeal. Your Honors, the appellants believe that the District Court, Judge Snyder, who I have a tremendous amount of respect for, made a mistake in this case in granting summary judgment. That there really was sufficient evidence to find the various elements necessary for this case to go forward. We human beings are not perfect and and we can be tricked and and great magicians and con artists know that sometimes the best way to fool people is to hide something in plain sight and we believe that that's that's clearly what happened here and and Mr. Graham and and Ms. Brockwell and others similarly situated were tripped and fooled by this this labeling of this biohazardous fee and I want to make clear what it is that we're arguing and what we're not arguing in this case. Anyone can make a profit. This is not about profit. The companies, the private companies like the VCA, charge as much as they want. What they can't do is fool people into thinking that they're something that they're not and what we believe that there is sufficient evidence at least for purposes of summary judgment to establish here is that by the placement and the characterization of this biohazardous waste fee on the invoice and the manner in which the discussions went back and forth with the clerk and the pamphlet and all of the circumstances here it was clear and it was reasonable for it to be clear to these customers that what they were paying is some kind of tax, some kind of government or extrinsically imposed fee that was imposed on everyone. So unlike all of the other fees, the cable fee of the Comcast K, the hotel service fee, the administrative fee in the Home Depot case, all of those other cases at the District Court and and the appellees have relied on in this matter both below and in this court where it's up to the consumer, up to the California consumer, up to the Oklahoma consumer to say, you know what, I don't want to pay that 17% service charge. I don't want to pay that $250 fee. I'm going to go someplace else where that's not imposed. But when you think it's a tax or a government imposed fee or regulation and when the company tricks you into thinking that, you're not going to go anyplace else. You're just going to pay it because you have to pay it. It's coming from an extrinsic source and that's what distinguishes this. What evidence do you have from the actual plaintiffs that we've got in front of us that they were tricked? And I think the evidence seems to be they just paid it and looked at it later and they said, oh that's interesting. And your honor, that goes to the heart of this and I understand the evidence is not as crystal clear as we would like it. I would ask the court as I go through this just to keep in mind where we're at, right, in the de novo review of summary judgment. Beginning with Mr. Graham, I would refer the court to ER 111. This is his deposition transcript. And before asking the question, just from looking at the line item, did you have any understanding of what that meant? He responds, I had a suspicion. What was your suspicion? It implied to me by use of the term biohazard waste that it was some form of governmental regulation or something that I, in my life's experience, typically see words like biohazardous waste associated with government regulations and requirements. Yeah, I slipped a cog. So who's that testifying? That is Mr. Graham. That's the plaintiff, Mr. Graham. And at what point is he testifying as to when he was looking at this? Was this after he'd paid the bill and he was being shown this afterwards? Well, it's clear with respect to Ms. Brockwell that she was given the invoice beforehand and then afterward. It seems from the reading and looking at the verb tense, is that this is when he's being given the invoice. He's saying it was, you know, it implied to me by use of the term biohazardous waste when he's looking at it, that it meant a government regulation. He goes on. It implied to me, he says, yeah. Well, he says in that quote, there's another one that's more instructive, Your Honor, because he actually questions the clerk about it while the transaction is taking place. And this is on excerpt of Record 112. The question is, and what do you recall about that conversation? And this is the conversation with the lady who's working on him. Answer, I asked her about that and she said, we are required to charge that to everybody. Question, did you, the lady say required by who? Answer, no. Question, how did, what did you understand from the lady's statement? Answer on page 113 of the excerpt of Record, my interpretation of that was that there was some governmental requirement that they charge that fee to everybody that they encounter as a customer. And he goes on to say that that was one of the reasons that that he had this belief. On page 115, he says, in fact, it was something that they were governmentally required to charge to everybody and that would be one factor. I cannot suggest to you that I sat there and contemplated for an extensive period of time to develop a long list of why I would or wouldn't pay the bill. He's been very frank, but this is clearly happening in real time. He's questioning the clerk. And your honors, this is completely consistent with this fraud scheme. You know, one of the things that I've been preparing for today, I really wanted to emphasize that you look at, is excerpt of Records beginning on 417. And this is like a PowerPoint. It was an internal PowerPoint that VCA put together. And it's called Biohazard Fee, an Opportunity for Improvement. And there's this cute little beagle with this fat bubble above him with a bone, a dog with a bone. And they go on to explain that why biohazard is a big deal to VCA. It's the number two revenue-producing code. It's the number one profit-producing code, 15 million in 2010. But they talk about the biohazard challenges. The fee does not increase with the complexity of the case. It's a lightning rod for client complaints. And it's a recurrent source of staff complaints. They know this is a problem. And we have to couple that, and you couple how it's structured with this deposition testimony. So what's the bill look like? I mean, my understanding of the bill is that part of the bill is specified out as the government charges, such as taxes. And part of the bill is just the bill. And the biohazard fee is on the part that's the bill. You can take a look at it, your honor, at least one sample of it. They vary from hospital to hospital. My record is at ER 77. And so on this particular one, it was June 8th, 2010. And you have all the descriptions lined up. Exam consultation, glucose, the IV catheter, partial day hospital, intensive care, miscellaneous prescriptions, nursing injections, and then a drug, pharma, barba, something, bituates or something. So these are all things that the dog or the cat or whatever is receiving. It's at the bottom, just like in many bills or invoices that we get, the last item you get is the tax or the fee or whatever it might be. And that's where it's placed. And that's where these plaintiffs believe that that's what it was. It was a government imposed fee. It was a government regulation. You know why the fees seem to change? Because the  from bill to bill. I was reviewing these last night and sometimes it seemed consistent, sometimes they seem different. That's a great question, your honor. They make it up. I mean, that's what's clear. There were a number of questions in the 30B6 deposition, and I can refer the court to that. It's in our briefs, where they have no real basis. There was no attempt to quantify the cost of the biohazard. They just came up with it. If you look at the record page 72 and excerpt of record page 58, you have it in both places there. This is the 30B6 deposition, I believe. Counsel will correct me if I'm wrong. No, it was the 30B6 deposition of Carol Johnson. And they asked about the fee and she says, we never said here are all the exact charges included and here's the revenue generated by the fee. Did VCA ever hire any person outside of costs? Not to my knowledge. Do you ever recall VCA hiring anyone outside to tell VCA how much to charge? No, not to my knowledge. It was solely VCA who determined the biohazard waste management fee? Yes. You know, I'm looking at the various examples of bills in front of me, and none of them doesn't say biohazard waste management fee. It just says biohazard waste management. Now, if it said on the bill biohazard waste management fee, I think your case would be stronger. Your Honor, there's no question that there are things that could have made this case stronger. There are factual issues. But the reason I'm saying that is, you keep referring to it as being on the bill as a biohazard waste management fee. I stand corrected. But it appears on the bill only as biohazard waste management. Right. Okay. No question about that. It looks to me, in a sense, more like a service that's being performed. That is to say, they are managing the biohazard. Your Honor, I'm not going to suggest for a moment that there are not multiple reasonable interpretations of this. And counsel, I'm sure Mr. Henke is very able, he's going to get up here and give you some very reasonable interpretations. But again, we're at summary judgment, and the interpretation offered by these two is reasonable. Now, I need to identify a problem with the other one. I went to Mr. Graham. Going back to your initial question, with respect to Ms. Brockwell, her deposition transcript is far from the ideal of clarity. Because as the district court, as Judge Snyder pointed out in her order, there were several times that she denied, based on the way the questions were asked, she denied seeing it at the time that she was purchasing it. But then in other questions, when she was under further examination by the defense, as I understand it, they asked probably one too many questions, and she made it clear that at the time that she was purchasing the invoice, she viewed it as a tax. And I want to refer the court to that to make sure that's in front of the court as well. And that's excerpt of record 86 and 87. She has asked this question on 86. And when you reviewed those, referring to the invoices, did you look to see whether or not you were being charged a biofee? No. But then she says, I just looked at the services, this is to your point, and she characterizes the services as everything besides the bio-waste fee. She says, I always thought that fee was just a fee that was required, you know, taxes, whatever is at the bottom. Since it wasn't a service, I just thought it was a fee that was required. So your honor, you interpret it as potentially a service. She interpreted it not as a service. I'm not saying that you're unreasonable or she's unreasonable. Do we have a copy in the record of the I believe, your honor, it was consistent with the ER-70, the California one. The ones I've got, at least in front of me right now, it's not at the bottom. I'll just look at the one that's on... Well, if you look at ER-77, your honor, that's the one, that is, I believe, the one that she signed. And I'm not positive. It's got her initials on it. It has EJB and that is her initial. So I think the answer to your question, your honor, is it is excerpt of record 77 and you will see that the biohazard waste MGMT period is on the bottom. And I believe that's what she was referring to. Okay, thank you. Yeah, that helps. And then her other statement following right up on that, on ER-87, she was asked, and at the time that you paid the invoices, you didn't think it was a tax, did you? So this is a defense counsel trying to get her to say, she says, I didn't think anything on the invoice was up for debate. I sign a thing that says I authorize you to do this and that I'm liable for any professional fees at the time of the service. So it lists what they did as an actual treatment and then it has that biohazard fee and it has a total. So I just assumed it was a government surcharge or I don't know, like, something like you're required. Biohazard sounds like it's something that's required to me. And, you know, I was thinking last night, your honors, this word biohazard. You ask someone to hold a gun, you ask them to hold a knife, or you ask them to hold something containing biohazardous waste. Nine times out of ten, I'm guessing they're gonna hold the gun with a knife before they hold that biohazard waste. That is an intimidating, that is a phrase that, that's serious stuff. That's stuff that the government regulates. And that's where these plaintiffs see that. Okay, we're down to about a minute and a half. Okay, so I probably should reserve some time because I suspect Mr. Hanke may have a few words to say and I will appreciate the court's patience. Good morning. My name is Rex Hanke. I'm here on behalf of VCA with my colleague John Karazinski, who handled this case in the trial court. Plaintiffs say that they have two theories here. First theory is unfairness, that somehow the fee was unfair. I submit their concession today that there's no issue about how much profit we made or didn't make disposes of any claim of unfairness. Because their whole unfairness claim is basically you're making too much money off of this and you shouldn't have been able to do that and that was somehow unfair. So let me turn to the rest of their case, which is their fraud or misrepresentation case. The fact of the matter is, if you look through the bills, there is nothing on the bills that suggests that this is government mandated. And there's nothing about the location of this that suggests it's government mandated. In fact, it's always separated from the section about taxes and it's always up with the other services that are being provided. The only implication of the placement and location is that it's not a government fee. So there isn't anything here that suggests it's a fee. Now our opponents have been clever about this sometimes. First, they talk about fee and as Judge Fletcher noted, never says fee. And if you look, for example, in their reply brief, what do they end up calling this? They drop management and so they say it's a biohazardous fee. No place is that in the record. We never said anything of the kind. And what else do they have for plaintiffs asked a secretary, what is this fee? Or a receptionist. And she said it's required of everybody. That in no way says that the government is required. It just says we require everybody to pay this fee. No, sorry, she said it in the passive and you just changed it into the active. Fair enough. But it doesn't indicate that the government is requiring something like this. And that's the real question here. Is there any evidence that indicates the government's doing it? And so they're left with quoting their own depositions and saying, well we thought that it was a government fee. Well as to Ms. Brockwell, I think the evidence is clear that she only got this thought after she talked to one of the plaintiffs on vacation in Tahiti or Fiji or someplace like that. And was asked, oh did you see this? And so on. Before that, she had nothing about it. She hadn't even noticed it. And as to the other plaintiff, I respectfully submit that having a single plaintiff come in here and say, oh this is the way I interpret it, and that that creates a triable issue of fact, is not the law here. We've cited cases in our brief that say, both California cases, federal cases, that you need something beyond that. Surveys, studies, even anecdotal evidence, they have none of that. They have nothing other than one of the two plaintiffs comes in and says, oh gee, this is what I thought it meant, therefore there should not be summary judgment here. I submit that cannot be the standard. It is not the standard in the cases, and it is utterly unworkable to have that be the approach. Because then every statement that somebody puts out is going to have to go to trial unless it settles. Because the plaintiff is always going to come in and say, I interpreted it to mean X in a way that I thought was misleading and false. And I cannot imagine that that is going to be the law here. Now all this makes sense except, it's odd that they shouldn't just charge the bill whatever it is. That they separate this out as biohazard waste management, charge it separately, and they have to be thinking that they will get better consumer cooperation doing it that way instead of just putting it into the bill. So the question is, what do they think the consumer is thinking when it sees that, when the consumer sees that? Is it likely that the consumer will actually have some sense that there's some officialdom behind that? I mean, their argument is not a frivolous argument. Your Honor, I wasn't saying it was frivolous, but there's no evidence. They conducted discovery here of VCA, and there's nothing that they came up with that shows that VCA was trying to do this, or that it thought that's what consumers were going to think, or that it did it this way because it thought it could deceive consumers and make them think it was a government fee. There isn't any evidence whatsoever. If there was evidence, I take Your Honor's point, of course. If they had evidence that VCA had sat down and said, hmm, you know, if we do it this way, they're going to think it's a government fee and they're going to pay it, that would be a very different case. But there isn't anything like that here. All they are left with is the testimony of one plaintiff who says, hmm, I thought it was a government fee. Nothing else. What do you do with the argument that they charge the fee irrespective of whether or not the particular service provided to the animal had anything to do with biohazard or biohazard waste? Certainly. It doesn't say waste. Oh, it has nothing to do with biohazard. I bring my cat in, they look at the cat, the cat sits on the counter for a little while, the vet comes out and looks at it. I take my cat home and I get a $3.56 portion of a bill that talks about as if what the line item said was biohazardous waste. Yeah, no, I'm sorry, I misspoke. But my cat sitting on the counter there for a few minutes, there was very little biohazard waste management involved. Waste management, but what this is, and that's why it's management, it's more than just disposal of the waste. It's running the hospital, it's teaching people how to keep the place clean, it's teaching them how to comply with federal and state laws that deal with the disposal of biohazardous waste. It's to keep the place clean. It's not simply disposing of pet waste, but all the things that go with that to make sure that the hospital is clean and complies with the law. So it's not, as they suggest, that what their argument is, the cat comes in, the cat doesn't pee on the floor or the counter, therefore there's no biohazardous waste. With respect to this animal, that's correct. Right, and therefore it's all misleading. But we never said biohazardous waste. What we talked about was a management fee to manage. Well, you said biohazard waste, but then you said management. Management, right. And so we're trying to manage the problem. And managing the problem is more than simply cleaning up after the cat goes on the counter. It's making sure that the whole system to biohazardous waste works properly and keeps the hospital clean and keeps the hospitals in compliance with biohazardous laws. So it's not just directed at waste. And that, I submit, is the reason that that argument does not have validity here. Although, again, I don't think it's a frivolous argument because if you're charging somebody a fee for biohazardous waste management and there's no biohazardous waste produced by the animal that was brought in, that sounds a little odd. I'm irritated by special fees for the airlines when it's 25 bucks to carry my bag, but they carried my bag. It was my bag. Here, the cat didn't pee on the counter. Right, but they carried your bag before they charged you the fee. You used to carry the bags for free. My point is, if you say that there's a claim here, I submit you're gonna have a claim over baggage fees. Well, no. My point is, when they charge me $25 to check the bag, they checked the bag, and it was my bag. Here, there's a biohazardous waste management fee, and my animal produced no biohazardous waste. It's those other darn animals that came in. Right. So this suggests that they're charging me something for something that has to do directly with my animal's biohazardous waste when it's not true. My point is, with the airline fee, they carried your bag before and didn't get anything for it. Now you're getting a separate charge, but they're still carrying the bag. Nothing changed. You just get a charge and that's finally a biohazardous waste management fee for every animal. So when they clean the rooms, for example, when an animal comes in and they have to spray the antiseptic on it, you're saying that's part of this management expense? Right. And they clean the floors, and they train people to do what they need to do to deal with disposal of the waste. They train people. They spend money on saying, okay, here's how you dispose of needles. Here's how you dispose of animal waste, and so on. That's part of the management. It's not simply walking in, cleaning up a particular animal's waste. So that, I submit, is the answer. That's the response to the argument. Yes. Okay. I think in the end, what this boils down to is, yes, could it have been clearer? Well, of course it could have been clearer. You know, I said in an oral argument recently that I wouldn't have a good lawyer. In all statutes, all contracts were clear. Wouldn't be anything to do, for me, as a lawyer. A good lawyer is never unclear by accident. Right. This unfortunately isn't the way the world works. Lawyers don't handle all things like this, including what it says on the bills. So it could have been clear. We don't dispute that. But I think they had no incentive to do it. Well, I don't know about that. Yes, because after this lawsuit's all over, we're not going to get a bill that looks any different from what this is right here. No, no, Your Honor. In that regard, we've stopped doing this. We just don't do it anymore. We've eliminated that line item. That doesn't happen now? No. It's gone. Oh, okay. We eliminated it because it was causing problems. People had concerns over it. Employees did. Customers complained. So we got rid of it. But the question for the Court, I think, in the end is, is this something that a reasonable number, appreciable number of consumers would look at and go, this is a government charge? And I submit there's no adequate evidence that would put this past summary judgment, where all the evidence really boils down to one of the plaintiffs saying, oh yeah, that's what I thought it meant. Thank you. Thank you. And Your Honor, you'll use the example of the baggage fee, and I think it's a good one. They can charge whatever they want, $25, $50, $100, $150. And if you don't want to do that, you go over to Southwest Airlines, where they don't charge for the baggage fee. You have a choice. It's clear that it's United or American or whoever who's charging the fee. What's fraudulent and misleading and frankly unfair about this is they're characterizing it by design in such a vain to the consumer that this is a fee or tax imposed by an extrinsic agency. And that is a significant difference between the baggage fee. I agree with Mr. Hanke that you cannot have a ipsa dixit standard at summary judgment. It is because I say it is. And that's not what we're saying at all. What we're saying is that the explanation being given in these depositions is reasonable. This is a reasonable reliance. They're giving reasons based on their experience, based on the characterization, based on the placement and location. All of these different factors need to be considered. And this is what we believe warrants a trial in this case. Anecdotal evidence is sufficient under the law as we set forth in our brief to support by itself the reasonable reliance. The there the there were two elements. It was the privacy right waiver and then there was the geolocation. The privacy right was something which they did when they activated their form, the phone or their their account five years prior to buying the iphone. Okay, you're over time. So if you want to sum up, I'll just sum up your honor. These debates back and forth, whether it's reasonable or not, there is an evidentiary debate and all we're submitting, your honor, is that that this matter should be the summary judgments of the reverse. You should have an opportunity to play this out at trial. Okay, thank you. Thank both sides for good arguments. Graham versus VCA Animal Hospital submitted for decision.
judges: W. Fletcher, Owens, Moskowitz